IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTIAN GAGNON,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-6566** |
| | : | |
| **PBPP/DOC,** *et al.*, | : | |
|     **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                                                                     **JANUARY 15, 2025**

Plaintiff Christian Gagnon, who is currently incarcerated at SCI Coal Township, brings this *pro se* action alleging that his civil rights were violated when he was arrested on a parole violation and subsequently detained at SCI Phoenix. Gagnon seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Gagnon *in forma pauperis* status and dismiss his Complaint. He will be given leave to file an amended complaint if he can cure the deficiencies noted by the Court.

**I.    FACTUAL ALLEGATIONS**[1]

The Court understands Gagnon to present claims pertaining to his arrest for a parole violation and the time that he was detained at SCI Phoenix thereafter, from December 15, 2022 until June 15, 2023. (*See* ECF No. 1 at 4-6; ECF No. 4 at 1-2.)[2] Named as Defendants are:

---

[1] Gagnon used the form complaint available to unrepresented litigants to file his claims and an additional handwritten supplement. (ECF Nos. 1, 4.) The Court considers the entire submission to constitute the Complaint, for which the Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[2] Gagnon asserts that "[t]hey chose to give me 6 mths in an SCI over a de minimis accusation that is not serious enough to put anyone in prison. Then they sent me to a CCC in Chester that is meant for Technical Parole Violators because I no longer had a home to go to.

"PBPP/DOC";[3] Mr. Terra, Superintendent of SCI Phoenix; Ms. Sipple, "Deputy SCI Phoenix"; Wendy Shaylor, Grievance Coordinator at SCI Phoenix; Mr. Wright, Unit Manager at SCI Phoenix; Ms. Stickney, "Unit Psych" at SCI Phoenix; Roslyn Casey, Parole Field Agent; and Amina Wilkerson, Supervising Parole Field Agent. (ECF No. 1 at 2-4.) He presents his claims against Defendants in their individual and official capacities.

Gagnon indicated on the form complaint that he is a "pending technical parole violator." (*See Id.* at 5.) He alleges that parole agent Roslyn Casey and her supervisor, Amina Wilkerson, pulled him out of a "Psychiatric CRC Hospital" on December 15, 2022. (ECF No. 1 at 5; ECF No. 4 at 1.) According to Gagnon, he was in a "CRC @ 8th & Spruce seeking psychiatric help." (ECF No. 1 at 5.) Gagnon contends that Defendant Casey "was certainly notified & she said it was ok. But she dropped a rubber stamped warrant for [his] arrest and had [him] pulled out the next morning then drove . . . to SCI Phoenix." (*Id.*)

As alleged, "SCI Phoenix" refused Gagnon "the right to see a psychiatric [doctor] when [he] was in a crisis and was going to commit suicide." (*Id.* at 5.) According to Gagnon, "[f]or 6 mths in SCI Phx I requested to see a psych dr. I asked all the above and even followed through with grievance procedure to be denied." (*Id.*) He also alleges that when he was "kidnapped" and brought to SCI Phoenix, he "was placed on Q Unit with population when TPV's are supposed to be segregated." (*Id.*) Gagnon claims that he spoke with Ms. Stickney "multiple times" and that he "even complained to Mr. Wright" that he needed to see a doctor "to get back on medication.

---

I've been through hell ever since the PBPP/DOC have been doing whatever they want to us parolees." (ECF No. 4 at 2.)

[3] The Court understands Gagnon to mean the Pennsylvania Board of Probation and Parole ("PBPP") and the Pennsylvania Department of Corrections ("DOC").

(*Id.*)  Gagnon also alleges that Mr. Wright "told Ms. Fields[4] and I there were 1,500 inmates to 1 doctor, and I have to wait to be seen 'if' I'm seen in six months." (*Id.*)  Gagnon asserts that "staff make every excuse" to keep him from seeing a doctor. (*Id.*)  He claims that "[t]hey wanted me to purchase their drugs they brought into the prison." (*Id.*)

Gagnon claims that his mental and financial health suffered due to Defendants' actions. (*Id.* at 6.)  He seeks monetary damages and injunctive relief.[5]  (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Gagnon leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

---

[4] Ms. Fields is not named as a defendant in this matter.

[5] Gagnon indicates that he wants the Court to reprimand and fire Defendants, and that he wants "to press charges because they are the criminals in this matter." (Compl. at 6.)  The Court is not empowered to grant such relief under § 1983.  *See Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *2 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee") (citing *Teal v. Moody*, No. 15-1402, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019)); *Millhouse v. Levi*, 267 F. App'x 140, 141 (3d Cir. 2008) (*per curiam*) (affirming dismissal of plaintiff's "Motion for Court to Investigate []" because, *inter alia*, "there is no federal right to require the government to initiate criminal proceedings.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Berrigan*, 482 F.2d 171, 173-74 (3d Cir. 1973)).  In any event, it does not appear that Gagnon has standing to seek injunctive relief of any sort, especially since he is no longer incarcerated at SCI Phoenix.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) ("To show irreparable harm, the party seeking injunctive relief must at least demonstrate that there exists some cognizable danger of recurrent violation of its legal rights." (internal quotations omitted)).

[6] However, since Gagnon is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Gagnon is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled

to relief. *See* Fed. R. Civ. P. 8(a)(2). The Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* The important consideration for the Court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III. DISCUSSION

Gagnon seeks to present claims under 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing Gagnon's allegations as this Court must, the Court understands Gagnon to present claims based on the parole revocation against Defendants Casey and Wilkerson, and claims for deliberate indifference to his serious medical needs against the remaining Defendants. Despite that liberal construction, Gagnon has not alleged a plausible basis for a claim against any of the named Defendants.[7]

---

[7] Gagnon lists the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments as the basis for his claims. (*See* ECF No. 1 at 4.) He also refers to "Due Process and Mental Health Cruel & Unusual Punishment," illegal search and seizure, as well as "Ineffective Counsel." (*Id.*) A passing reference without factual support is not sufficient to bring claims before a court. *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272, 217 L. Ed. 2d 116 (2023), *reconsideration denied*, 144 S. Ct. 417, 217 L. Ed. 2d 232 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does

A.     **Claims Based on Parole Revocation**

Gagnon takes issue with his arrest on a parole warrant while he was at the "Psychiatric CRC Hospital." However, the factual allegations are sparse, rendering the true nature of any claim based on these events unclear. According to Gagnon, Parole Agent Roslyn Casey and her supervisor Amina Wilkerson pulled him out of a "Psychiatric CRC Hospital" on December 15, 2022, where he had been "seeking psychiatric help." (ECF No. 1 at 5; ECF No. 4 at 1.) As alleged, Agent Casey "was certainly notified & she said it was ok. But she dropped a rubber stamped warrant for [his] arrest and had [him] pulled out the next morning then drove . . . to SCI Phoenix." (*Id.*) Gagnon further contends that "[t]hey chose to give me 6 mths in an SCI over a de minimis accusation that is not serious enough to put anyone in prison." (ECF No. 4 at 2.)

To the extent Gagnon seeks to assert a § 1983 claim based on his arrest on a parole violator warrant or the revocation of his parole, he has failed to properly plead a claim. Having reviewed Gagnon's submission in its entirety and construing the allegations in the Complaint liberally, the circumstances of the alleged unconstitutional acts remain unclear. Notably, he does not allege what violation or violations he was arrested for and what facts, if any, support a conclusion that officials lacked a basis to arrest him for those violations. As noted above, the Federal Rules of Civil Procedure require a complaint to describe actions taken by the defendant in relation to the plaintiff's claims in a manner that is not ambiguous or confusing. *Garrett*, 938 F.3d at 93. Although one can discern that Gagnon seeks to claim that his constitutional rights in the parole revocation process were violated, or that, perhaps, officials should have had mercy for him because of his life circumstances (which is not a basis for a constitutional claim), the factual

---

not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

basis for any challenge to the parole violator warrant or parole process "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted).

Further, when a plaintiff seeks damages in a civil rights lawsuit in connection with a prior criminal conviction or sentence, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Commonly referred to as the "*Heck* bar," *see Wallace v. Kato*, 549 U.S. 384, 385 (2007), this rule prevents plaintiffs from bringing claims, the success of which would render a sentence or conviction invalid, unless the plaintiff can show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

The doctrine set forth in *Heck* has been extended to civil rights cases challenging parole violator warrants as well as parole and probation revocations. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (affirming district court's dismissal because a finding for plaintiff on his § 1983 claims against the parole officer would necessarily demonstrate the invalidity of the revocation decision, which had not been rendered invalid); *see, e.g., Williams v. Barkley*, 616 F. App'x 484, 485 (3d Cir. 2015) (*per curiam*) (affirming dismissal of § 1983 claims based on argument that extension of original sentence after parole violation violated double jeopardy rights and stating that claims were barred under *Heck*); *Jackson v. Alt*, 236 F. App'x 850, 851 (3d Cir. 2007) (*per curiam*) (affirming dismissal of *Heck*-barred § 1983 claims based on alleged due process and equal protection violations arising from issuance of parole violator warrant). Moreover, "*Heck* is clear that the favorable-termination requirement is a necessary element of the claim for relief under § 1983[.]" *Garrett v. Murphy*, 17 F.4th 419, 429 (3d Cir. 2021). To the extent that he seeks to present a § 1983 claim based on his incarceration pursuant to a parole violator warrant or the revocation of his parole, Gagnon has not alleged that he successfully challenged the revocation decision in any state proceeding. This is another reason why his claims challenging his arrest pursuant to the parole violator warrant and any related detention in connection with parole proceedings fail.

  **B.**   **Claims Based on Medical Deliberate Indifference**

Gagnon seeks to raise medical deliberate indifference claims against the named DOC employees based on a lack of psychiatric treatment while he was detained at SCI Phoenix from December 15, 2022 until June 15, 2023. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were

deliberately indifferent to his serious medical needs.[8] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A deliberate indifference to a serious medical need claim can apply in various inmate medical situations, including failing to provide adequate mental health services." *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*) (affirming dismissal of deliberate indifference claims on screening). Rather, "when medical care is provided, [courts] presume that the treatment of a prisoner is proper absent

---

[8] The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*).

9

evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic*, 854 F.3d at 227; *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Gagnon alleges that "SCI Phoenix" refused him "the right to see a psychiatric [doctor] when [he] was in a crisis and was going to commit suicide." (ECF No. 1 at 5.) According to Gagnon, "[f]or 6 mths in SCI Phx I requested to see a psych dr. I asked all the above and even followed through with grievance procedure to be denied." (*Id.*) Gagnon claims that he spoke with Ms. Stickney "multiple times" and that he "even complained to Mr. Wright" that he needed to see a doctor "to get back on medication." (*Id.*) Gagnon also alleges that Mr. Wright told non-Defendant Ms. Fields and Gagnon that "there were 1,500 inmates to 1 doctor," and that Gagnon had to wait to be seen by a doctor *if* he was to be seen in six months. (*Id.*) Gagnon asserts that "staff make every excuse" to keep him from seeing a doctor. (*Id.*)

As an initial matter, Gagnon has presented no factual allegations against Defendants Terra, Sipple, and Shaylor. (*See* ECF Nos. 1 and 4.) Defendant Terra, the Superintendent of SCI Phoenix, is listed in the caption of the Complaint, and Defendants Sipple and Shaylor are listed in the caption of the Complaint and in the list of Defendants. To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant. *See Rode*

10

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Because the Complaint includes no facts alleging that these Defendants violated Gagnon's constitutional rights, any claims against them will be dismissed.[9]

---

[9] Furthermore, to the extent that Gagnon seeks to present deliberate indifference claims against Defendants Terra or Sipple simply due to their high-ranking positions, this is not sufficient basis to state a plausible claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege personal involvement in an underlying constitutional violation); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. The Complaint also does not reflect any plausible basis for supervisory liability on the part of these Defendants.

Additionally, Gagnon mentions in the Complaint that he filed a grievance that was denied and Defendant Shaylor is identified as the Grievance Coordinator at SCI Phoenix. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Further, Gagnon's allegations are conclusory as presented and fail to sufficiently allege the personal involvement of the remaining Defendants, Ms. Stickney and Mr. Wright. To give rise to a Constitutional violation, a defendant must have been subjectively aware of the risk and disregarded it. Gagnon's allegations are too generalized to support a plausible inference that either Ms. Stickney or Mr. Wright intentionally refused to provide treatment, delayed necessary medical treatment based on a non-medical reason, or prevented Gagnon from receiving needed or recommended medical treatment.

Additionally, pleading that a group of individuals violated his rights, without specifying what each individual did or did not do that violated his rights, is insufficient to put a defendant on notice of the conduct with which he is charged and does not state a plausible claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). Gagnon's allegations that "SCI Phoenix" or "all of the above" refused him treatment does not meet the *Iqbal* pleading standard.

C. **Official Capacity Claims and Claims against PBPP and DOC**

Gagnon checked the box on the form Complaint to indicate that he intends to present claims against Defendants their official capacities as well as individual capacities. (*See* ECF No. 1 at 2, 4.) Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary

12

damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Thus, suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity."); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983).  Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly, the Court must dismiss Gagnon's damages claims against the individual Defendants in their official capacities, as well as the "PBPP" and the DOC, because they are immune from suit.  Such claims will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Gagnon leave to proceed *in forma pauperis*. All official capacity claims, as well as claims against the "PBPP" and the DOC, will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Claims based on the revocation of parole and medical deliberate indifference will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii) and Gagnon will be given leave to amend these claims. An appropriate Order follows regarding amendment.

                                            **BY THE COURT:**

                                            **MARY KAY COSTELLO, J.**