IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN GAGNON,                          :
    Plaintiff,                         :
                                       :
    v.                                 :    CIVIL ACTION NO. 24-CV-6566
                                       :
PBPP/DOC, *et al.*,                        :
    Defendants.                        :

## MEMORANDUM

COSTELLO, J.                                           MARCH   21 , 2025

Currently before the Court is the Amended Complaint filed by *pro se* Plaintiff Christian

Gagnon alleging violations of his rights when he was arrested on a parole violation.  For the

following reasons, the Amended Complaint will be dismissed.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Gagnon commenced this civil action on December 9, 2024.  (ECF No. 1.)  By way of

background, in his initial Complaint Gagnon presented claims pertaining to his arrest for a parole

violation and the time that he was detained at SCI Phoenix thereafter, from December 15, 2022

until June 15, 2023.  (*See* ECF No. 1 at 4-6; ECF No. 4 at 1-2.)[2]  He named as Defendants:

---

[1] In his most recent filing, Gagnon used the form complaint available to unrepresented
litigants to file his claims and an additional handwritten supplement.  (ECF No. 13.)  The Court
considers the entire submission to constitute the Amended Complaint, for which the Court adopts
the sequential pagination assigned by the CM/ECF docketing system.

[2] Gagnon alleged that "[t]hey chose to give me 6 mths in an SCI over a de minimis
accusation that is not serious enough to put anyone in prison.  Then they sent me to a CCC in
Chester that is meant for Technical Parole Violators because I no longer had a home to go to.
I've been through hell ever since the PBPP/DOC have been doing whatever they want to us
parolees."  (ECF No. 4 at 2.)

"PBPP/DOC";[3] Mr. Terra, Superintendent of SCI Phoenix; Ms. Sipple, "Deputy SCI Phoenix"; Wendy Shaylor, Grievance Coordinator at SCI Phoenix; Mr. Wright, Unit Manager at SCI Phoenix; Ms. Stickney, "Unit Psych" at SCI Phoenix; Roslyn Casey, Parole Field Agent; and Amina Wilkerson, Supervising Parole Field Agent.  (ECF No. 1 at 2-4.)

Gagnon alleged that parole agent Roslyn Casey and her supervisor, Amina Wilkerson, pulled him out of a "Psychiatric CRC Hospital" on December 15, 2022, where he had gone the prior day seeking psychiatric help.  (ECF No. 1 at 5; ECF No. 4 at 1.)  According to Gagnon, although Defendant Casey had been notified that he was at the hospital, she "dropped a rubber stamped warrant" for his arrest for a parole violation and had him brought to SCI Phoenix.  (ECF No. 1 at 5.)

"SCI Phoenix" allegedly refused Gagnon "the right to see a psychiatric [doctor] when [he] was in a crisis and was going to commit suicide."  (*Id.* at 5.)  According to Gagnon, "[f]or 6 mths in SCI Phx I requested to see a psych dr.  I asked all the above and even followed through with grievance procedure to be denied."  (*Id.*)  He also alleged that when he was brought to SCI Phoenix, he "was placed on Q Unit with population when TPV's [presumably "technical parole violators"] are supposed to be segregated."  (*Id.*)  Gagnon claimed that he spoke with Ms. Stickney "multiple times" and that he "even complained to Mr. Wright" that he needed to see a doctor "to get back on medication."  (*Id.*)  He alleged that Mr. Wright "told Ms. Fields[4] and I there were 1,500 inmates to 1 doctor, and I have to wait to be seen 'if' I'm seen in six months" and that "staff make every excuse" to keep him from seeing a doctor.  (*Id.*)  He claimed that

---

[3] The Court construed "PBPP/DOC" to mean the Pennsylvania Board of Probation and Parole ("PBPP") and the Pennsylvania Department of Corrections ("DOC").

[4] Based on a reading of the Complaint and Amended Complaint, the Court understands that Ms. Fields is Gagnon's girlfriend.

"[t]hey wanted me to purchase their drugs they brought into the prison." (*Id.*) Gagnon claimed

that his mental and financial health suffered due to Defendants' actions and sought monetary

damages and injunctive relief. (*Id.* at 6.)

In a January 15, 2025 Memorandum and Order, the Court dismissed Gagnon's claims.

(*See* ECF Nos. 7, 8.) All official capacity claims, as well as claims against the "PBPP" and the

DOC, were dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state

a claim. (*See* ECF No. 7 at 12-13.) Claims based on the revocation of parole and medical

deliberate indifference were dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii). The

Court explained to Gagnon that his allegations based on his arrest on a parole violator warrant or

the revocation of his parole were too vague and did not comply with Federal Rule of Procedure

8. (*See id.* at 6-7.) The Court noted, *inter alia*, that Gagnon did not allege what violation or

violations he was arrested for and what facts, if any, support a conclusion that officials lacked a

basis to arrest him for those violations. (*See id.* at 6.) The Court further explained that the

claims based on a parole violator warrant or parole revocation were barred by the doctrine in

*Heck v. Humphrey*, 512 U.S. 477 (1994), because he had not alleged that he successfully

challenged the revocation decision in any state proceeding. (*See id.* at 7-8.) Additionally, the

Court dismissed claims against Defendants Terra, Sipple, and Shaylor because he had not

presented any factual allegations against them. (*See id.* at 10-11.) To the extent he had sought to

present supervisory liability or claims based on the handling of prison grievances, such claims

were dismissed as well. (*See id.* at 11 n.9.) The Court also explained that Gagnon had failed to

adequately plead the personal involvement of Defendants Stickney and Wright in any medical

deliberate indifference claim, as his allegations were too generalized. (*See id.* at 12.) Gagnon

further was advised that pleading that a group of individuals violated his rights was insufficient

to put any defendant on notice of the conduct of which he or she is charged and does not state a

plausible claim.  (*See id.*)[5]  He was given thirty-days leave to amend his claims.

Gagnon then filed a Motion for Court Appointed Counsel (ECF No. 9) and a "Motion for

Extension of Time to Consult with My Attorney David Sherman and to Stay in Abeyance until

After My Release of 5/8/25."  (ECF No. 11.)  By Order dated February 7, 2025, the Court denied

the motions and granted Gagnon additional time to file an amended complaint.  (ECF No. 12.)

On March 12, 2025, Gagnon filed the Amended Complaint that is presently before the Court.

(ECF No. 13.)

In the Amended Complaint, Gagnon claims that Agent Roslyn Casey, and her supervisor

Amina Wilkerson, violated his HIPAA and Due Process rights by removing him from a crisis

response center on December 15, 2022, to take him to SCI Phoenix.  (Am. Compl. at 2-4.)

Gagnon contends that he was pulled out of the hospital against his will, handcuffed, and forced

to prison, resulting in assault and battery.  (*Id.* at 4.)  He alleges that when he arrived at SCI

Phoenix, a Lieutenant, whose name he does not recall, called the Parole Agents and told them to

never again do what they did.  (*Id.*)  He was placed "in population as an Act 122 TPV" but

claims that Act 122 provides that he should have been segregated from other offenders and

"diverted from an SCI."  (*Id.*)  Gagnon asserts that he should have been seen by a Board member

before being brought to an SCI, "but Agents are not doing so."  (*Id.*)  He further claims that the

Board is to act like a Magistrate before signing a warrant but agents are "copying a rubber

---

[5] Gagnon also was advised that the Court could not grant the additional relief he sought in addition to money damages, a reprimand and the termination of Defendants' employment, as well as criminal charges.  (*See* ECF No. 7 at 3 n.5.)  Further, the Court explained that Gagnon did not have standing to seek injunctive relief of any sort because he is no longer incarcerated at SCI Phoenix.  (*Id.*)

stamped warrant they keep re-using before kidnapping a parolee off the street and throwing them

in prison." (*Id.* at 4-5.)

Gagnon also alleges that he "went to the Unit Psych Ms. Stickney for help" but she did

not want him to see a psych doctor. (*Id.* at 5.)  He sought help from his Unit Manager Mr.

Wright, who told his girlfriend that there is only one psychiatric doctor for 1,500 inmates. (*Id.*)

Gagnon contends that he followed the grievance process and "took the grievance as far as

Superintendent Terra and Central Office, in which Central Office never responded.  Probably

because I was released after 6 mths for allegedly violating parole for the 1st time." (*Id.*)

According to Gagnon, when there are empty beds at an SCI, "they" violate a parolee. (*Id.*)

Gagnon asserts that he has not been able to get the proper psychiatric help that he needs because

the PBPP will not let him and "keeps throwing" him into the DOC. (*Id.* at 6.)  Gagnon seeks

monetary relief. (*See id.* at 3.)

## II.     STANDARD OF REVIEW

Because the Court has granted Gagnon *in forma pauperis* status, the Amended Complaint

is subject to statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court

to dismiss it if, among other things, it fails to state a claim.  Whether a complaint fails to state a

claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d

236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the

litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all

reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts

sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Gagnon is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Gagnon primarily asserts claims based on alleged violations of his constitutional rights due to his arrest on a parole warrant and for deliberate indifference to his medical needs during the time he was incarcerated at SCI Phoenix.[6] To state a claim under § 1983, the vehicle by

---

[6] Gagnon also alleges that certain Defendants violated his rights under HIPAA. (*See* Am. Compl. at 2, 4.) However, these allegations are not actionable because there is no federal private right of action under HIPAA. *See Byrne v. Berks Cnty. Jail*, No. 24-1193, 2024 WL 2794446, at *1 (3d Cir. May 31, 2024) (citing *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021); *Payne*, 998 F.3d at 660 (noting that "[e]very circuit court to consider whether HIPAA created a private right to sue has found that it does not" and citing cases from the Second, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits)); *Johnson v. WPIC*, 782 F. App'x 169, 171 (3d Cir. 2019) (*per curiam*) (citing *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006)); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and*

which federal constitutional claims may be brought in federal court, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal

involvement of each defendant in the alleged constitutional violation is a required element,

meaning a plaintiff must allege how each defendant was involved in the events and occurrences

giving rise to the claims brought against that defendant. *See Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1998).

As an initial matter, the Court notes that Gagnon failed to expressly list the individuals or

entities against whom he seeks to present his claims in the Amended Complaint. (*See* Am.

Compl. at 1-6.) Gagnon lists only PBPP/DOC as the defendant in the caption of the Amended

Complaint. (*See id.* at 1.) However, PBPP/DOC already has been dismissed with prejudice as a

Defendant in this case and the Court will not discuss it further. (*See* ECF No. 8.) In the initial

Complaint, Gagnon listed as Defendants: PBPP/DOC, Superintendent Terra, Deputy

Superintendent Sipple, Grievance Coordinator Shaylor, Unit Manager Wright, and "Unit Psych"

Stickney, as well as Parole Agents Casey and Wilkerson. (ECF No. 1 at 2-4.) Although Gagnon

does not include a list of Defendants in the Amended Complaint (*see* Am. Compl. at 1-6), the

---

*recommendation adopted*, 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) ("The ability to bring an
enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA
compliant, lies within the exclusive province of the Secretary of Health and Human Services, not
the hands of private citizens."); *see also Cobb v. PrimeCare Med. Corp.*, No. 18-1516, 2020 WL
13729620, at *6 (M.D. Pa. Jan. 29, 2020) (citations omitted), *report and recommendation
adopted*, 2020 WL 13730063 (Feb. 24, 2020) (stating that HIPAA "does not create a private
right of action for alleged disclosures of confidential medical information. . . . Therefore, neither
[HIPAA] nor 42 U.S.C. § 1983 supports an action based on HIPAA violations.") (internal
quotation omitted). Accordingly, all claims for money damages asserting violations of HIPAA
are dismissed with prejudice.

Court understands Gagnon to present due process and false imprisonment claims against Parole

Agents Casey and Wilkerson.  Further, the Amended Complaint is best construed as presenting

medical deliberate indifference claims against Stickney and Wright.[7]  As set forth more fully

below, however, Gagnon once again has not alleged a plausible basis for a claim against any

Defendant.

A.      Claims Based on Parole Revocation

Gagnon essentially asserts that he should not have been arrested for a technical parole

violation, and further, that proper procedures were not followed during his arrest and placement

at SCI Phoenix.  He claims that Agent Roslyn Casey, and her supervisor Amina Wilkerson, acted

with deliberate indifference and negligence when they removed him against his will from a crisis

---

[7] Gagnon avers in the Amended Complaint that he tried to grieve "the situation," which the Court interprets to mean the alleged lack of medical treatment, but was denied.  (*See* Am. Compl. at 5.)  He mentions Shaylor, Sipple, and Terra in this context.  (*See id.*)  As explained in the January 15 Memorandum (ECF No. 7 at 11 n.9), claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).
    To the extent Gagnon again seeks to present a supervisory liability claim against Superintendent Terra simply due to his high-ranking position, this, again, is not sufficient basis to state a plausible claim. *See Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017) ("Suits against high-level government officials must satisfy the general requirements for supervisory liability."); *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege personal involvement in an underlying constitutional violation).  The Amended Complaint also does not reflect any plausible basis for supervisory liability on the part of Superintendent Terra.

response center on December 15, 2022, for a parole violation and brought him to SCI Phoenix .[8]

(Am. Compl. at 2-4.)  According to Gagnon, when he arrived at SCI Phoenix, a Lieutenant called

the Parole Agents and told them to never again do what they did.  (*Id.*)  Gagnon asserts that he

should have been seen by a Board member before being brought to an SCI, "but Agents are not

doing so."  (*Id.*)  He further claims that the Board is to act like a Magistrate before signing a

warrant but agents are "copying a rubber stamped warrant they keep re-using before kidnapping

a parolee off the street and throwing them in prison."  (*Id.* at 4-5.)

To the extent Gagnon seeks to assert a § 1983 claim based on his arrest on a parole

violator warrant or the revocation of his parole, he has failed to properly plead a claim.  Gagnon

contends that he was falsely imprisoned, but he does not allege the violation or violations for

which he was arrested and what facts, if any, support a conclusion that officials lacked a basis to

arrest him for those violations.[9]

---

[8] Gagnon claims that he was handcuffed and "forced to a prison cell," and contends that this constitutes, kidnapping and assault and battery.  (*See* Am. Compl. at 4, 5.)  He offers no further facts in support of his conclusions.  A passing reference without factual support is not sufficient to bring claims before a court.  *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  To the extent that he alleges that the Defendants acted with negligence as well as deliberate indifference, negligence is insufficient to allege a constitutional claim, *see Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983), and the Court does not understand him to assert a stand-alone negligence claim since his passing reference to the word is inserted in reference to the constitutional standard.  Accordingly, the Court will not further discuss any such claim.

[9] False arrest and false imprisonment are "nearly identical claims" that are generally analyzed together.  *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005).  To state a § 1983 claim for false arrest or false imprisonment, the plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v.*

Further, *Heck* bars Gagnon's claims as pled.  As the Court previously explained, when a

plaintiff seeks damages in a civil rights lawsuit in connection with a prior criminal conviction or

sentence, "the district court must consider whether a judgment in favor of the plaintiff would

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated." *Heck*, 512 U.S. at 487.  The *Heck* bar prevents plaintiffs from bringing claims, the

success of which would render a sentence or conviction invalid, unless the plaintiff can show

"that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus." *Id.*  at 486-87; *see also*

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred

(absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter

the target of the prisoner's suit (state conduct leading to conviction or internal prison

---

*City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)).  However, unlike an arrest for a crime requiring probable cause, an arrest for violation of probation or parole only requires reasonable suspicion that the terms of probation or parole were violated.  *See generally Griffin v. Wisconsin*, 483 U.S. 868, 875-880 (1987); *see also United States v. Miller*, 267 F. App'x 152, 154 (3d Cir. 2008) (detention of parolee did not violate Fourth Amendment where officer had reasonable suspicion to detain him); *Breslin v. Brainard*, No. 01-7269, 2003 WL 22133833, at *7 (E.D. Pa. Sept. 15, 2003) ("To prevail on his claim that his arrest violated his constitutional rights under the Fourth Amendment, plaintiff must show that Knorr lacked reasonable suspicion to believe that plaintiff had violated one of the conditions of his parole."); *but see United States v. Noble*, 326 F. App'x 125, 127 (3d Cir. 2009) (noting "it is unclear whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less demanding standard applies" and declining to answer that question).  Gagnon fails to plead facts in support of a claim even under the probable cause standard that would be more favorable to him.

proceedings) — if success in that action would necessarily demonstrate the invalidity of

confinement or its duration." (emphasis omitted)).

The doctrine set forth in *Heck* has been extended to civil rights cases challenging parole

violator warrants as well as parole and probation revocations.  *See Williams v. Consovoy*, 453

F.3d 173, 177 (3d Cir. 2006) (affirming district court's dismissal because a finding for plaintiff

on his § 1983 claims against the parole officer would necessarily demonstrate the invalidity of

the revocation decision, which had not been rendered invalid); *see, e.g., Williams v. Barkley*, 616

F. App'x 484, 485 (3d Cir. 2015) (*per curiam*) (affirming dismissal of § 1983 claims based on

argument that extension of original sentence after parole violation violated double jeopardy

rights and stating that claims were barred under *Heck*); *Jackson v. Alt*, 236 F. App'x 850, 851 (3d

Cir. 2007) (*per curiam*) (affirming dismissal of *Heck*-barred § 1983 claims based on alleged due

process and equal protection violations arising from issuance of parole violator warrant).

Moreover, "*Heck* is clear that the favorable-termination requirement is a necessary element of

the claim for relief under § 1983[.]"  *Garrett v. Murphy*, 17 F.4th 419, 429 (3d Cir. 2021).  To

the extent that he seeks to present a § 1983 claim based on his incarceration pursuant to a parole

violator warrant or the revocation of his parole, Gagnon has not alleged that he successfully

challenged the revocation decision in any state proceeding.  Thus, Gagnon's claims challenging

his arrest pursuant to the parole violator warrant and any related detention in connection with

parole proceedings, even if sufficiently pled, would be dismissed.[10]

---

[10] Gagnon also indicates that he was placed "in population as an Act 122 TPV" but claims that Act 122 provides that he should have been segregated from other offenders and diverted from an SCI.  (*See* Am. Compl. at 4.)  To the extent that Gagnon takes issue with his placement, an inmate does not have the right to be placed in any particular prison or any particular custody level.  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("Although the NJDOC does have polices regarding custodial placements, these policies

11

### B.    Claims Based on Medical Deliberate Indifference

Gagnon again seeks to raise medical deliberate indifference claims based on an alleged

lack of psychiatric treatment while he was detained at SCI Phoenix from December 15, 2022

until June 15, 2023.  Specifically, the Amended Complaint is best understood as alleging that

Defendants Wright and Stickley acted with deliberate indifference to his serious medical needs.

However, these claims suffer from the same deficiencies as the initial Complaint, which were

identified and discussed in the Court's January 15 Memorandum.  (*See* ECF No. 7.)

As the Court previously explained, (*see id.* at 8-10), to state a constitutional claim based

on the failure to provide medical treatment, a prisoner must allege facts indicating that prison

officials were deliberately indifferent to his serious medical needs.[11]  *See Farmer v. Brennan*,

511 U.S. 825, 835 (1994).  "A deliberate indifference to a serious medical need claim can apply

in various inmate medical situations, including failing to provide adequate mental health

services."  *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d

Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as

requiring treatment or one that is so obvious that a lay person would easily recognize the

necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834

F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A prison official is not deliberately

indifferent "unless the official knows of and disregards an excessive risk to inmate health or

---

and the Due Process Clause do not give an inmate a liberty interest in being housed in a
particular institution or at a particular custody level.").

[11] The standard under the Eighth Amendment and Fourteenth Amendment for claims
related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See
Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*).

safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S.

at 837.  Deliberate indifference is properly alleged "where the prison official (1) knows of a

prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving

needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999).  Not every complaint of inadequate prison medical care rises to the level of deliberate

indifference.  *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023)

(*per curiam*) (affirming dismissal of deliberate indifference claims on screening).

Here, Gagnon claims that he "went to the Unit Psych Ms. Stickney for help" but she did

not want him to see a psych doctor.  (Am. Compl. at 5.)  He also contends that he sought help

from his Unit Manager Mr. Wright, who told his girlfriend that there is only one psychiatric

doctor for 1,500 inmates.  (*Id.*)  Gagnon further alleges that he followed the grievance process

and "took the grievance as far as Superintendent Terra and Central Office, in which Central

Office never responded.  Probably because I was released after 6 mths for allegedly violating

parole for the 1st time."  (*Id.*)  Gagnon concludes that he has not been able to get the proper

psychiatric help that he needs because the PBPP will not let him and "keeps throwing" him into

the DOC.  (*Id.* at 6.)

Gagnon's allegations are conclusory as presented and fail to sufficiently allege the

personal involvement of the remaining Defendants, Stickney and Wright.  To give rise to a

Constitutional violation, a defendant must have been subjectively aware of the risk and

disregarded it.  *Farmer*, 511 U.S. at 837.  Gagnon's allegations, that Stickney did not want him

to see a psychiatric doctor and that Wright told Gagnon's girlfriend that there is only one

psychiatric doctor for 1,500 inmates, are too generalized to support a plausible inference that either Stickney or Wright were aware of his need for treatment and intentionally refused to provide treatment, delayed necessary medical treatment based on a non-medical reason, or prevented Gagnon from receiving needed or recommended medical treatment.

## IV.   CONCLUSION

For the foregoing reasons, the Amended Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  As Gagnon already has been given an opportunity to cure the defects in his claims and has been unable to do so, the Court concludes that further amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").  A final dismissal order follows, which shall be docketed separately in accordance with Federal Rule of Civil Procedure 58(a).

                                        BY THE COURT:

                                        _____
                                        **MARY KAY COSTELLO, J.**